661 So.2d 1234 (1995)
NATIONAL TITLE INSURANCE COMPANY, Appellant,
v.
SAFECO TITLE INSURANCE COMPANY, et al., Appellees.
Nos. 93-2222, 93-2335.
District Court of Appeal of Florida, Third District.
October 5, 1995.
Rehearing Denied November 8, 1995.
*1235 Cooper & Wolfe and Maureen F. Lefebvre and Marc Cooper; Hardeman & Suarez, for appellant.
Lapidus & Frankel and Richard L. Lapidus; Maland & Ross and Lauri Waldman Ross, for appellees.
Before JORGENSON, COPE and GODERICH, JJ.
JORGENSON, Judge.
National Title Insurance Company appeals from an order granting a new trial on the issue of damages only. Safeco cross appeals from the denial of its motion for a directed verdict on the issue of liability for breach of contract. For the reasons that follow, we reverse on Safeco's cross-appeal, and hold that the trial court erred in allowing the issue of Safeco's liability to reach the jury. Our disposition of this issue moots the appeal in chief.
In 1982, National, a mortgage lender, loaned $103,500.00, or 95% of the purchase price of a home, to Younts and Bowman. Home Title, an agent of Safeco, acted as the closing agent and wrote the title insurance policy for Safeco, the title insurance underwriter. The title insurance policy provided that Safeco insured "against loss or damage ... sustained or incurred by the insured by reason of ... any defect in or lien or encumbrance on such title." The policy listed only National's mortgage on the property, and did not list any second mortgage. At the closing, Rosen, president of Home Title, notarized and witnessed certain documents, including a Federal National Mortgage Association (FNMA) document certifying that no second mortgage existed on the property. No documents given to National at the closing revealed a second mortgage on the property. However, unbeknownst to National, the buyers  Younts and Bowman  had obtained a second mortgage from the developer Interdevco, for $3,009.02. Rosen had notarized and witnessed the second mortgage.
In November, 1982, after the first mortgage had been recorded but before the second mortgage was recorded, National sold the first mortgage to FNMA "without recourse", and made certain representations that no second mortgage existed. As part of the sale to FNMA, National purchased private mortgage insurance from Verex, representing that no second mortgage existed on the property.
In 1984, the second mortgage for $3,009.92 was satisfied. In 1988, Younts and Bowman defaulted on the first mortgage. National's mortgage insurance policy with Verex was invalidated when the existence of the second mortgage was discovered, although that mortgage had been satisfied four years earlier. National paid FNMA $75,000  the balance of the unpaid first mortgage  and received a deed to the Younts/Bowman property in lieu of foreclosure. The litigation that ensued concerns this payment of $75,000 from National to FNMA.
In July, 1989, National sued Safeco (the title insurer); Interdevco (the developer), Home Title (the closing agent and agent for Safeco), and Rosen (the president of Home Title) for breach of the title insurance policy and negligence, seeking to recover the $75,000 it had paid to FNMA. Defaults were entered against Home Title and Interdevco. At trial, Safeco argued, in essence, that any loss incurred by National was not the result of any breach of the title insurance policy. The trial court denied Safeco's motion for a directed verdict on the breach of policy claim. By special interrogatory verdict, the jury found that Safeco had breached its contract with National, and that as a result of that breach, National had suffered $75,000 in damages. The jury further found that Rosen *1236 did not know of the second mortgage at the closing. On the negligence claim, the jury found that the two defaulting defendants  Interdevco and Home Title  were negligent and that National suffered damages of $75,000; the jury apportioned liability between Interdevco ($50,000) and Home Title ($25,000). The trial court then ordered a new trial on the issue of damages only on the count for breach of contract, ruling that the verdict was inconsistent. The court reasoned that Safeco's liability for damages could not be greater than its agent Home Title's liability.
The trial court erred as a matter of law in denying Safeco's motion for a directed verdict on National's claim for breach of the title insurance policy. Even if Safeco breached the policy by not disclosing the existence of a second mortgage, the damages sought by National were not a natural and proximate result of that breach.
When a title insurer breaches a title insurance policy issued to a mortgagee, the measure of damages is "the difference between the market value of the mortgage, if the lien thereof were as insured, and the market value of the mortgage with the title imperfection." Goode v. Federal Title & Ins. Corp., 162 So.2d 269, 271 (Fla. 2d DCA 1964). See also Interstate Title Corp. v. Miller, 581 So.2d 213 (Fla. 4th DCA 1991) (where title insurance company negligent in failing to record mortgage, mortgagee's measure of damages is extent to which security impaired). See generally V. Woerner, Annotation, Measure, Extent, or Amount of Recovery on Policy of Title Insurance, 60 ALR 2d 972 (1958).
"A mortgagee's loss is measured by the extent to which the insured debt is not repaid because the value of security property is diminished or impaired by outstanding lien encumbrances or title defects covered by the title insurance." CMEI, Inc. v. American Title Ins. Co., 447 So.2d 427, 428 (Fla. 5th DCA 1984) (emphasis added). In this case, National did not allege, nor could it have, that its security was impaired by the second mortgage, which was satisfied two years after the closing, and four years before the owners defaulted on the first mortgage.
Although the title insurance policy does not define the terms "loss or damage ... sustained or incurred by the insured by reason of ... any defect in or lien or encumbrance on such title," even a more expansive view of the measure of damages recoverable would not, as a matter of law, entitle National to recover the $75,000 it paid to FNMA. The second mortgage was not an outstanding encumbrance when National paid FNMA. In short, National's loss was occasioned not by the short-lived and long-discharged second mortgage, but by the owners' default on the first mortgage.[1] That default was not in any way attributable to the undisclosed second mortgage.
Our reversal on the cross-appeal moots the primary issue in the appeal in chief, namely whether the trial court erred in ordering a new trial on the issue of damages on the breach of contract count.
As to the judgment entered on the jury verdict for Rosen, we affirm. The jury found that Rosen did not know of the second mortgage at the time of the closing. We do not reach the evidentiary issues raised by National, as we hold that as a matter of law, Rosen could not be held liable for the $75,000 loss incurred by National. The loss  the same loss for which recovery was sought in the breach of contract action against Safeco  was not caused by the failure to disclose the second mortgage, even assuming that Rosen was aware of that mortgage. Because the element of causation is absent, Rosen cannot be liable. See Applegate v. Barnett Bank, 377 So.2d 1150, 1152 (Fla. 1979) ("Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it."); Bird Lakes Dev. Corp. v. Raskin, 596 So.2d 133 (Fla. 3d DCA 1992) (trial court may be upheld for any reason appearing in the record).
*1237 In sum, we reverse on the cross-appeal, and remand this case to the trial court with directions to enter a directed verdict for Safeco. As to the remaining points raised in the appeal, and not rendered moot by our disposition on the cross-appeal, we affirm.
NOTES
[1] In its count against Safeco for breach of the title insurance policy, National specifically alleged that its loss "was sustained by plaintiff due to the default in payment by Younts and Bowman, who failed to make any payments after August 1, 1987."